**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB HENNIE,<br><br>Defendant. | No. 2:23-cv- |

**COMPLAINT**

NOW COMES Plaintiff, the United States of America (the "United States"), on behalf of its agency the U.S. Small Business Administration ("SBA"), and hereby files the instant Complaint against Jacob Hennie ("Hennie") to recover treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, civil penalties under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), partially codified at 12 U.S.C. § 1833a, and to recover money for common law or equitable causes of action for payment by mistake and unjust enrichment based upon Hennie's receipt of Paycheck Protection Program ("PPP") and COVID-19 Economic Injury and Disaster Loan Emergency Advance ("EIDL Emergency Advance") funds to which he was not entitled.

**JURISDICTION AND VENUE**

1.      This action arises under the FCA, FIRREA, and Maine common law.

2.      The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1345 because the United States is the plaintiff. The Court also has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367(a).

3.      The Court has personal jurisdiction over Defendant under 31 U.S.C. § 3732(a) because Defendant can be found, resides, or transacts business in this District, or has committed the alleged acts in this District.

4.      Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) as Defendant can be found in this District.

### PARTIES

5.      Plaintiff, United States of America, guarantees and funds certain loans through the SBA.

6.      Defendant, Jacob Hennie, is a resident of Orono, Maine.

### The Paycheck Protection Program

7.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program. The program was modified and extended thereafter.

8.      To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to provide, among other

things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

9.      A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

10.     PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

11.     The application process to obtain a PPP loan required the eligible recipient to make the following good faith certifications and acknowledgments:

     a.   That the applicant was eligible to receive a PPP loan under the rules in effect at the time the application was submitted (the "PPP Rules");

     b.   That the uncertainty of current economic conditions made the loan request necessary to support the ongoing operations of the eligible recipient;

c.  That the applicant was in operation on February 15, 2020, had not

permanently closed, and was either an eligible self-employed

individual, independent contractor, or sole proprietorship with no

employees, or had employees for whom it paid salaries and payroll

taxes or paid independent contractors, as reported on Form(s) 1099-

MISC;

d.  That the funds would be used to retain workers and maintain payroll;

or make payments for mortgage interest, rent, utilities, or other

covered costs under the PPP Rules;

e.  That if the funds were knowingly used for unauthorized purposes, the

federal government may find the individual legally liable for such

charges as fraud;

f.   That not more than 40 percent of the loan proceeds may be used for

non-payroll costs;

g.  That documentation verifying the number of full-time equivalent

employees on payroll as well as the dollar amounts of payroll costs,

covered mortgage interest payments, covered rent payments, and

covered utilities would be provided to the lender if required;

h.  That the eligible recipient had not received and would not receive

another loan under the Paycheck Protection Program;

i.  That the information provided in the application and the information

provided in all supporting documents and forms was true and accurate

in all material respects; and

j.   That the lender would confirm the eligible loan amount using the documents submitted by the applicant.

### EIDL Emergency Advances

12.   The CARES Act also established the SBA's COVID-19 Economic Injury and Disaster Loan ("COVID-19 EIDL") program.

13.   Under this program, the SBA offered two types of COVID-19 EIDL funding.  The first type, COVID-19 EIDL loans, were low-interest, fixed-rate, long-term loans intended to help overcome the effects of the pandemic by providing working capital to meet operating expenses, including payroll, rent/mortgage, utilities, and other ordinary business expenses, and to pay business debt incurred at any time.  The second type, EIDL Emergency Advances, were funds that could be awarded to COVID-19 EIDL loan applicants that were meant to serve as an "advance" on the applicant's COVID-19 EIDL loan.  The EIDL Emergency Advances were intended to provide immediate relief to small businesses experiencing a temporary loss of revenue.

14.   To receive an EIDL Emergency Advance, the COVID-19 EIDL loan applicant did not need to accept the loan or be approved for the loan to receive an advance; the applicant needed only to have an existing COVID-19 EIDL loan application. In 2020, the EIDL Emergency Advance was limited at $1,000 per employee up to a maximum of $10,000 per business.  The SBA did not require EIDL Emergency Advances to be repaid to the SBA, even if the underlying COVID-19 EIDL loan application subsequently was denied.

15.   Unlike PPP loans, EIDL Emergency Advances were submitted directly to, and processed by, the SBA.

16.     In advance of distributing the EIDL Emergency Advance, SBA required that the borrower file a certification, under penalty of perjury, that they were eligible to apply for an COVID-19 EIDL loan.

## The False Claims Act

17.     The FCA provides, in pertinent part, that any person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States for three times the amount of damages which the United States sustains, plus a civil penalty per violation.  31 U.S.C. § 3729(a)(1).

18.     FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015. *See* 28 U.S.C. § 2461 note. For violations occurring after November 2, 2015, the civil penalty amounts currently range from a minimum of $13,508 to a maximum of $27,018. 28 C.F.R. § 85.5.

19.     For purposes of the FCA, the terms "knowing" and "knowingly"

(A) mean that a person, with respect to information—

    i.    has actual knowledge of the information;

    ii.   acts in deliberate ignorance of the truth or falsity of the information; or

    iii.  acts in reckless disregard of the truth or falsity of the information; and

(B)  require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

20.     Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States. *Id*. § 3729(b)(2)(A).

6

21.     The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. *Id.* § 3729(b)(4).

### FIRREA

22.     Section 951 of FIRREA, as amended, codified at 12 U.S.C. § 1833a, provides that the Attorney General may recover civil penalties of up to $1 million per violation against persons who commit specified violations as established by a preponderance of the evidence.  28 C.F.R. § 85.5 (the maximum civil penalty was increased to $2,372,677 for assessments after January 30, 2023 for which violations occurred after November 2, 2015).  The statute further provides that the Attorney General alternatively may recover the amount of any gain to the person committing the violation, or the amount of the loss to a person other than the violator stemming from such conduct, up to the amount of the gain or the loss.  *Id.*  The predicate violations identified in Section 951 that can form the basis for liability under FIRREA include, among others: (a) knowingly or willfully making a materially false or fraudulent statement affecting a federally insured financial institution (18 U.S.C. § 1001); (b) making a false statement on a loan application to a financial institution, "the accounts of which are insured by the Federal Deposit Insurance Corporation" (18 U.S.C. § 1014); and (c) knowingly making a false statement for the purpose of influencing a decision by the Administrator of the SBA or to obtain a loan, money, or anything of value under the SBA's 7(a) program, including the PPP (15 U.S.C. § 645(a)).

23.     Section 1109(i) of the CARES Act provides that PPP loans are SBA loans for purposes of 15 U.S.C. § 645.

**Allegations**

24.     It is a violation of the FCA to knowingly obtain an SBA-guaranteed PPP loan which is not supplied in compliance with the PPP Rules, and to subsequently obtain forgiveness of such loan. Hennie obtained or caused to be obtained two PPP loans and was subsequently involved in obtaining forgiveness of both of these loans, in violation of the FCA.

25.     Defendant applied for and received an SBA-guaranteed first-draw PPP loan in the amount of $18,625.00, which was approved on February 26, 2021 (the "First-Draw Loan"), based upon misrepresentations in a loan application submitted to a financial institution (Bank 1). In the PPP loan application, Defendant knowingly misrepresented his annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant was eligible. This misrepresentation caused Defendant to receive loan proceeds well in excess of what he would be entitled, if any at all.

26.     Defendant knowingly used the First-Draw Loan funds for unauthorized purposes.

27.     Defendant applied for forgiveness of the First-Draw Loan, and the loan was forgiven in its entirety, including interest, in the total amount of $18,678.58, on June 15, 2021. In his application for forgiveness, Defendant knowingly misrepresented how he had used the First-Draw Loan funds. These misrepresentations caused Defendant to receive forgiveness of the First-Draw Loan, to which he was not entitled.

28.     The SBA paid $2,500 in processing fees to Bank 1 in connection with the First-Draw Loan distributed to Defendant.

29.     Defendant applied for and received an SBA-guaranteed second-draw PPP loan in the amount of $20,833.00, which was approved on May 18, 2021 (the "Second-Draw Loan"), based upon misrepresentations in a loan application submitted to a financial institution (Bank 2). In the PPP loan application, Defendant knowingly misrepresented his annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant was eligible. This misrepresentation caused Defendant to receive loan proceeds well in excess of what he would be entitled, if any at all.

30.     Defendant knowingly used the Second-Draw Loan funds for unauthorized purposes.

31.     Defendant applied for forgiveness of the Second-Draw Loan, and the loan was forgiven in its entirety, including interest, in the total amount of $21,056.74, on June 23, 2022. In his application for forgiveness, Defendant knowingly misrepresented how he had used the Second-Draw Loan funds. These misrepresentations caused Defendant to receive forgiveness of the Second-Draw Loan, to which he was not entitled.

32.     The SBA paid $2,500 in processing fees to Bank 2 in connection with the Second-Draw Loan distributed to Defendant.

33.     False statements and documents were submitted or caused to be submitted by Defendant to Banks 1 & 2 which misrepresented the amount of eligible payroll for Defendant's use of the loan proceeds. These false statements in the loan applications and forgiveness application were material to the payment of money by Banks 1 & 2 that was then reimbursed by the SBA (along with accrued interest), causing damages to the United States.

34.     Additionally, the false statements and documents Defendant submitted to Banks 1 & 2 were material to the payment of processing fees by the SBA to Banks 1 & 2, furthering damaging the United States.

35.     Additionally, it is a violation of the FCA to knowingly obtain EIDL Emergency Advance funds based on misrepresentations regarding the operations of an applicant's business. Defendant was individually involved in obtaining an EIDL Emergency Advance in violation of the FCA.

36.     Defendant applied for an EIDL Emergency Advance in the amount of $9,000.00.  This EIDL Emergency Advance was funded on July 6, 2020.

37.     In his application for the EIDL Emergency Advance, Defendant represented that he operated a business that employed nine people, and that he was eligible to apply for a COVID-19 EIDL loan.

38.     In reality, Defendant did not operate a business with any employees, and knowingly misrepresented that he did operate such a business in order to receive an EIDL Emergency Advance to which he was not entitled.

39.     Defendant was not eligible to apply for a COVID-19 EIDL loan, and knowingly misrepresented that was eligible to receive such a loan in order to receive an EIDL Emergency Advance to which he was not entitled.

40.     False statements were submitted to the SBA in Defendant's EIDL Emergency Advance application which misrepresented the number of individuals Defendant employed and misrepresented that Defendant was eligible to apply for a COVID-19 EIDL loan. These false statements in the EIDL Emergency Advance application were material to the payment of money to Defendant by the SBA, causing

damages to the United States.

The United States realleges and incorporates all paragraphs above of this Complaint as fully set forth herein in all Counts listed below:

## COUNT I
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

41.   Defendant knowingly requested and obtained two PPP loans for an amount he was not entitled to, in violation of the PPP Rules.

42.   Defendant knowingly requested and received forgiveness of both PPP loans, despite his failure to comply with the PPP Rules.

43.   By virtue of these false claims, the United States was damaged for the full amount of the PPP loans and the processing fee paid to Banks 1 & 2, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

44.   Defendant knowingly requested and obtained an EIDL Emergency Advance for an amount he was not entitled to, in violation of the SBA's rules regarding EIDL Emergency Advance funds.

45.   By virtue of these false claims, the United States was damaged for the full amount of the EIDL Emergency Advance, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

## COUNT II
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Making or Using False Records or Statements

46.   Defendant knowingly submitted two PPP loan applications that contained misrepresentations regarding his payroll costs and intended use of PPP funds.

47.     Defendant subsequently knowingly submitted PPP forgiveness applications that misrepresented his use of the PPP funds and eligibility for loan forgiveness.

48.     By virtue of these false statements, the United States was damaged for the full amount of the loans and the processing fee paid to Banks 1 & 2, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

49.     Defendant knowingly submitted an EIDL Emergency Advance application that contained misrepresentations regarding the numbers of individuals he employed. for an amount he was not entitled to, in violation of the SBA's rules regarding EIDL Emergency Advance funds.

50.     By virtue of these false statements, the United States was damaged for the full amount of the EIDL Emergency Advance, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

## COUNT III
### False Statements to the SBA
### 12 U.S.C. § 1833a (FIRREA)

51.     This is a claim for civil penalties under FIRREA, 12 U.S.C. § 1833a, as amended.

52.     Defendant, for the purposes of fraudulently obtaining two federally guaranteed PPP loans and inducing the SBA to forgive the loans, in violation of 12 U.S.C. § 1833a, unlawfully, willfully and knowingly made false statement or certifications to SBA Lenders and the SBA in violation of 15 U.S.C. § 645(a).

53.     Defendant signed the PPP loan agreements, thereby knowingly falsely

representing that he would "comply with all SBA guidance" as it applied to the PPP

loans. These false statements were knowingly false and made for the purpose of

influencing the SBA to obtain PPP loan proceeds in violation of 15 U.S.C. § 645(a).

54.     Because of Defendant's acts, he is liable for civil penalties up to the

maximum amount authorized under 12 U.S.C. § 1833a(b).

## COUNT IV
## Unjust Enrichment

55.     This is a claim for the recovery of monies by which Defendant has been

unjustly enriched.

56.     By obtaining from the United States funds to which he was not entitled

(through Banks 1 & 2 and via the SBA directly), Defendant was unjustly enriched and

the United States is entitled to damages in an amount of $53,735.32, plus interest,

together with any other damages to be determined at trial.

## COUNT V
## Payment by Mistake

57.     This is a claim for the recovery of monies the United States paid directly or

indirectly to Defendant as a result of mistaken understandings of fact.

58.     The United States' mistaken understandings of fact were material to its

decision to approve and then forgive the PPP loans and approve the EIDL Emergency

Advance provided by Defendant.

59.     The United States, acting in reasonable reliance on the truthfulness of the

statements contained in the PPP loan applications and the EIDL Emergency Advance

application, approved two PPP loans and an EIDL Emergency Advance distribution to

Defendant to which he was not entitled.

60.     The United States, acting in reasonable reliance on the truthfulness of the statements contained in the PPP loan forgiveness applications, forgave the PPP loans when they were not eligible for forgiveness.

61.     Thus, the United States is entitled to recoup the amount of the PPP loans and the EIDL Emergency Advance plus any other amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff the United States requests that judgment be entered in its favor and against Defendant as follows:

(a) On Counts I and II (False Claims Act), awarding the United States treble the damages it sustained for (1) the total forgiveness amount ($39,735.32) of the two PPP loans Defendant received, (2) the total amount ($5,000.00) of the processing fees paid by the United States to Banks 1 & 2, and (3) the total amount ($9,000.00) of the EIDL Emergency Advance Defendant received, together with the maximum civil penalties allowed by law;

(b) On Count III (FIRREA), awarding the United States civil penalties pursuant to 12 U.S.C. § 1833a equal to, at minimum, the total forgiveness amount of the two PPP loans - $39,735.32;

(c) On Count IV (Unjust Enrichment), awarding the United States the amount by which Defendant was unjustly enriched;

(d) On Count V (Payment by Mistake), awarding the United States the amount mistakenly paid to Defendant;

(e) awarding the United States pre- and post-judgment interest, costs, and filing fees; and

(f)  granting such other relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

The United States demands a jury trial in this case pursuant to Federal Rule of

Civil Procedure 38(b) of all claims and issues so triable.

Dated:          April 14, 2023                    Respectfully submitted,
                Portland, Maine


                                                  DARCIE N. MCELWEE
                                                  U.S. Attorney for the District of Maine


                                                  BY: /s/ James D. Concannon
                                                  JAMES D. CONCANNON
                                                  Counsel for the United States of America
                                                  Assistant U.S. Attorney
                                                  100 Middle Street
                                                  East Tower, 6th Floor
                                                  Portland, Maine 04101
                                                  (207) 780-3257
                                                  James.Concannon@usdoj.gov
                                                  *On behalf of the United States*